UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CANDICE HUNTER, an individual, <br><br> Plaintiff, <br><br> v. <br><br> SOUTHERN CALIFORNIA PERMANENTE MEDICAL GROUP, a California General Partnership, KAISER FOUNDATION HEALTH PLAN, a California non-profit corporation, and DOES 1 through 20, inclusive, <br><br> Defendants. | Case No.:  3:23-CV-02223-BEN-SBC <br><br> **ORDER GRANTING PLAINTIFF'S MOTION TO REMAND** <br><br><br> **[ECF No. 8]** |

Defendants Southern California Permanente Medical Group and Kaiser Foundation Health Plan (collectively "Defendants") removed this case based on federal preemption of state law under the Labor Management Relations Act ("LMRA").  Before the Court is Plaintiff Candice Hunter's ("Plaintiff") motion to remand the action back to the Superior Court of California, County of San Diego.  ECF No. 4 ("Mot.").  Defendants filed an opposition, ECF No. 5 ("Oppo."), and Plaintiff filed a reply.  ECF No. 6 ("Reply").  The briefing was submitted on the papers without oral argument pursuant to Civil Local Rule 7.1(d)(1) and Rule 78(b) of the Federal Rules of Civil Procedure.

After considering the applicable law and the parties' arguments, the Court **GRANTS** Plaintiff's Motion to Remand.

1

3:23-cv-02223-BEN-SBC

## I.    BACKGROUND FACTS[1]

Plaintiff, an African American woman, began working for Defendants around September 1995, and remains employed as a Lab Assistant.  ECF No. 1-2, Ex. E ("FAC") ¶ 19-20.  Beginning in 2017, Plaintiff was entrusted with additional responsibilities by former Lab Manager Ron Bajet ("Bajet"), including: training new employees; working on the scheduling rotation; and troubleshooting complicated blood draws.  *Id.* at ¶ 24. Following her perceived elevation, co-workers with identical job titles began making offensive comments based on Plaintiff's race.  *Id.* at ¶ 25.  Prior to her additional responsibilities, Plaintiff alleges she did not have any conflicts with her co-workers.  *Id.* at ¶ 26.  In November 2017 Plaintiff's co-workers submitted complaints against Plaintiff portraying her as an "angry black woman."  *Id.* at ¶ 30.  The complaints led to a meeting with Bajet where he openly laughed at the comments Plaintiff's co-workers made about her.  *Id.* at ¶ 31.  The harassment by co-workers continued, leading Plaintiff to request to work shifts different from the harassers in late 2017.  *Id.* at ¶ 32.

Throughout 2018, Plaintiff continued to perform the additional duties and continued to experience harassment, even in presence of Bajet who did nothing to correct the behavior.  *Id.* at ¶ 33-35.  In May 2019, Plaintiff reported the harassment to Bajet, and during that conversation Bajet made a "slave" comment to Plaintiff.  *Id.* at ¶ 38.  Bajet later denied making the "slave" comment.  *Id.*  Throughout 2020, Plaintiff continued to face harassment by co-workers, such as being completely ignored, receiving negative comments about her hair scarf, and attempts to influence new employees against her.  *Id.* at ¶ 39-41.  In June 2020, Plaintiff again reported the harassment to Bajet.  *Id.* at ¶ 42. Bajet responded by saying "be strong" but did not take any action.  *Id.*

On July 30, 2020, Plaintiff filed a discrimination complaint, this time with: Human Resources Consultant, Kari Pacheco ("Pacheco"), Lab Administrator, Dian Giles,

---

[1] For the purposes of Plaintiff Hunter's Motion to Remand, the Court assumes facts pled in the Complaint are true.  The Court is not making factual findings.

3:23-cv-02223-BEN-SBC

("Giles") Director of Administrative Assistants, Aldie Garcia ("Garcia"), and a local union representative. *Id.* at ¶ 45. On August 19, 2020, Plaintiff met with Pacheco to provide additional details about her compliant. *Id.* at ¶ 46.

Between August 26, 2020, and September 7, 2020, and again between September 16, 2020 through August 6, 2021, Plaintiff covered shifts for other employees at the Rancho San Diego jobsite in an effort to get away from her harassers. *Id.* at ¶ 47, 49. While working at Rancho San Diego, Plaintiff filed a grievance against Bajet. *Id.* at ¶ 49. On October 18, 2020, Plaintiff contacted Pacheco requesting an update. *Id.* at ¶ 50. Pacheco responded by requesting a meeting with Plaintiff and Garcia. *Id.*

On January 14, 2021, Bajet called Plaintiff at home at 10:02 p.m. *Id.* at ¶ 52. Plaintiff did not answer but attempted to return Bajet's phone call twice that evening and again the next morning. *Id.* Bajet did not respond to any of Plaintiff's phone calls. *Id.* Plaintiff learned that Bajet was seeking to cover overtime opportunities in the lab and instead of following up with Plaintiff, he scheduled two less senior employees for the overtime. *Id.* Bajet continued to ignore Plaintiff's calls and text messages and required an intermediary to communicate with Plaintiff. *Id.* at ¶ 53. In or about March 2021, Plaintiff amended her complaint against Bajet to include allegations that he made her work off-the-clock. *Id.* at ¶ 57. Defendants subsequently terminated Bajet. *Id.* at ¶ 59.

On July 14, 2021, Plaintiff received a schedule placing her back at her original jobsite in Otay Mesa. *Id.* at ¶ 60. Giles informed her that she was returning to Otay Mesa because complaints had been reported against her at the Rancho San Diego location. *Id.* at ¶ 61. Plaintiff then took medical leave of absence due to excessive anxiety over returning to Otay Mesa and facing complaints against her in Rancho San Diego. *Id.* at ¶ 62. On July 22, 2021, a few days before the expiration of her leave, Plaintiff spoke to Pacheco about the still incomplete investigation of her discrimination complaint. *Id.* at ¶ 63. Pacheco told her that the investigation was ongoing. *Id.* On August 12, 2021, Pacheco emailed Plaintiff informing her that the issues she raised in her

3:23-cv-02223-BEN-SBC

discrimination complaint were "personality conflicts that were handled in 2017." *Id.* at ¶ 65.

In September 2021, Plaintiff reported to Garcia that he was not assigning overtime in order of seniority, as required by a collective bargaining agreement ("CBA"). *Id.* at ¶ 66. Garcia responded indicating that Plaintiff needed to email him with the days she wished to pick up overtime hours. *Id.* Plaintiff alleges she was the only employee required to follow the additional email request step. *Id.* On November 10, 2021, Plaintiff began to cut back her hours in an effort to avoid a harasser. *Id.* at ¶ 68.

Between November and December 2021, Plaintiff noticed she was no longer being asked to train new employees. *Id.* at ¶ 69. On December 1, 2021, Plaintiff asked Technical Support Supervisor Alvin Baton why she was no longer being asked to train new employees. *Id.* Baton responded by saying that part-time workers were not allowed to train new employees. *Id.* However, a part-time co-worker and main harasser was tasked with training new employees. *Id.* The same co-worker received overtime on February 28, 2022. *Id.* at ¶ 70. When Plaintiff informed Baton that her seniority entitled her to that shift, Baton offered her a different overtime shift instead of addressing the issue. *Id.* On September 7, 2022, Defendants held a fact-finding meeting wherein Plaintiff was informed of new complaints against her by co-workers. *Id.* at ¶ 75. Plaintiff never received a copy of the conclusion or findings from that meeting before she left on medical leave on September 16, 2022. *Id.*

## II.    LEGAL STANDARDS

A defendant in state court may remove a civil action to federal court so long as that case could originally have been filed in federal court. 28 U.S.C. § 1441(1); *City of Chi v. Int'l Coll. of Surgeons*, 522 U.S. 156, 163 (1997). Removal of a state action may be based on either diversity or federal question jurisdiction. *City of Chi*, 522 U.S. at 163; *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). Whether or not the Court has federal question jurisdiction is governed by the "well-pleaded complaint rule," which states that "federal jurisdiction only exists when a federal question is presented on the

face of the plaintiff's properly pleaded complaint." *Caterpillar*, 482 U.S. at 392. "The rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." *Id.* The removal statutes are strictly construed, and removal jurisdiction is to be rejected in favor of remand if there are doubts as to the right of removal. *Nev. v. Bank of Am. Corp.*, 672 F.3d 661, 667 (9th Cir. 2012).

The Supreme Court has held that "if the resolution of a state-law claim depends on the meaning of a collective-bargaining agreement," then the "state law is pre-empted and federal labor-law principles" must decide the matter. *Lingle v. Norge Div. of Magic Chef, Inc.,* 486 U.S. 399, 405-406 (1988). State law claims that can be resolved independently of the CBA are not preempted by section 301 of the LMRA. *Lingle,* 486 U.S. at 407.

## III.    DISCUSSION

Plaintiff argues that Defendants improperly removed this case from state court because there is no federal jurisdiction. *See* Mot. at 1-2. Defendants contend that certain causes of action in Plaintiff's complaint are preempted by section 301 of the LMRA and therefore this Court has federal question jurisdiction[2]. Notice of Removal at ¶ 6, 24, 36, 37, 49; Oppo at 5. Defendants' argument rests on the view that the Court will need to interpret the CBA in order to adjudicate several of Plaintiff's causes of action. Notice of Removal at ¶ 24; Oppo. at 5. Plaintiff argues she can prove the elements of these causes of action without reference to the CBA, leaving her case outside of the scope of section 301 of the LMRA. Mot. at 9; Reply at 2.

### A. Section 301 of the LMRA

The Supreme Court has decided that with the enactment of the LMRA, Congress mandated federal courts to "to fashion a body of federal common law to be used to

---

[2] Defendants argue that causes of action one, two, three, four, and nine are preempted by the LMRA. Notice of Removal at ¶ 36; Oppo. at 5. Defendants further argue that the Court has supplemental jurisdiction over Plaintiff's causes of action five, six, seven, eight, and ten. Notice of Removal at ¶ 49.

3:23-cv-02223-BEN-SBC

address disputes arising out of labor contracts." *Burnside v. Kiewit Pacific Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007). Section 301 of the LMRA states:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce… may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29. U.S.C. § 185(a). The Supreme Court has held that certain state court claims involving a violation of the CBA must be resolved by federal law. *Allis-Chalmers Corp. v. Lueck,* 471 U.S. 202, 210 (1985). But the Court also cautioned "not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301 or other provisions of the federal labor law." *Id.* at 211.

Plaintiff's first, second, third, fourth, and ninth causes of action for harassment based on race, retaliation, and failure to prevent discrimination in violation of FEHA and the California Labor Code, are based on the same alleged facts, which Defedants's argue gives rise to the federal preemption jurisdiction. *See* FAC ¶ 102, 114, 122, and 169. The first cause of action in Plaintiff's First Amended Complaint for discrimination based on race[3] states:

> DEFENDANTS treated PLAINTFF less favorably than non-Black employees by subjecting her to discrimination in employment including, but not limited to: disregarding her seniority under the collective bargaining agreement when offering overtime to employees, requiring her to work off the clock, requiring her to take additional arbitrary steps to request overtime,

---

[3] Plaintiff's first cause of action states that it is for discrimination based on disability. Defendant's Notice of Removal made note of this inconsistency and treated it as a typo since in all other instances this cause of action has been referred to as discrimination based on race. Plaintiff failed to address the inconsistency in her Motion to Remand and Reply papers. The Court will treat the disability mention as a typographical error and proceed on the assumption that the first cause of action is that of discrimination based on race.

3:23-cv-02223-BEN-SBC

making racially charged comments to and about her, refusing to investigate her complaints, taking away her duties, and isolating her, excluding her from group activities.

FAC ¶ 91.  The central question then is whether the claims arise out of rights created by the CBA or if they arise from rights Plaintiff enjoys independent from the CBA.  If the first, then Plaintiff's claims would be preempted by section 301 of the LMRA, which in turn provides basis for jurisdiction; if the second, then the Court would lack federal question jurisdiction and be required to remand the case back to state court.

The Ninth Circuit set forth a two-part inquiry to determine whether a state law claim is preempted by section 301 of the LMRA in *Burnside*.  First, courts must inquire "whether the asserted cause of action involves a right conferred upon an employee by virtue of state law, not by a CBA." *Burnside,* 491 F.3d at 1059.  "If the right exists solely as a result of the CBA, then the claim is preempted." *Id.*  If not, then courts proceed to the second part of the inquiry and ask whether the right is "nevertheless 'substantially dependent on analysis of a collective-bargaining agreement.'" *Id.* (quoting *Caterpillar*, 482 U.S. at 394).  "If such dependence exists, then the claim is preempted by section 301." *Burnside*, 491 F.3d at 1059-60.  Once preempted, "any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Caterpillar*, 482 U.S. at 393; *see also Diaz v. Sun-Maid Growers of Cal.*, No. 1:19-cv-00149-LJO-SKO, 2019 WL 1785660, at *7–8 (E.D. Cal. Apr. 24, 2019) (denying motion to remand after determining that plaintiff's overtime claim preempted by § 301).

Using the *Burnside* test, first the Court will determine if Plaintiff's claims arise directly from rights created by the CBA.  Failing to find in the affirmative to step one, the Court would then determine whether the claim is "substantially dependent" on analysis of the CBA.

### 1. **Does Plaintiff's Claim Arise Directly from Rights in the CBA?**

3:23-cv-02223-BEN-SBC

Plaintiff repeats the claim throughout the complaint that Defendants engaged in "disregarding her seniority under the collective bargaining agreement when offering overtime to employees" and other acts unrelated to a CBA, in violation of California state law. This is the only reference to a CBA in her ten claimed state law causes of action. In the 84 paragraphs of factual assertions in her complaint, the CBA is rarely mentioned. When the CBA is mentioned tangentially and only for context. The claims as pleaded have little relationship to the CBA and "beyond the fact that they are asserted by an individual covered by such an agreement are simply not pre-empted by § 301." *Caterpillar*, 482 U.S. at 396, n.10.

The right to be free from discrimination based on one's race exists independent of a CBA between an employer and a union of represented workers. *See Ramierz v. Fox Television Studios, Inc.*, 998 F.2d 743, 748 (1993). Plaintiff brings this action not for CBA-created rights, but rather for the allegedly racially motivated treatment she received while working for Defendants. Plaintiff's allegations may involve violations of the CBA (such as disregarding her seniority when scheduling work) as evidence of the discriminatory treatment, but the Ninth Circuit has held that "reference to or consideration of the terms of a collective-bargaining agreement is not the equivalent of interpreting the meaning of the terms." *Ramierz*, 998 F.2d at 749.

Plaintiff's claims arise out of her right to be free from discrimination at work and as pleaded are not based on rights directly created by the CBA. Therefore, the inquiry proceeds to step two of the *Burnside* analysis to determine if Plaintiff's claims are substantially dependent on interpretation of the CBA.

2. **Are Plaintiff's Claims Substantially Dependent on Analysis of the CBA?**

8

Defendants argue that Plaintiff would need to rely on CBA-created rights to show an adverse employment action[4]. Notice of Removal ¶ 36, Oppo. at 6-7. An adverse employment action is an element of Plaintiff's discrimination claims. Specifically, Defendants argue that the Court will be required to interpret what constitutes an "equitable rotation" of overtime hours and what constitutes a sufficient "offer" for additional shifts. Oppo. at 13-14. Plaintiff argues that she will be able to establish her claims without reference to the CBA. Mot. at 9.

To determine whether a claim is "substantially dependent" on interpretation of the CBA a court determines whether a claim can be resolved by looking to, versus interpreting, a CBA. *Burnside*, 491 F.3d at 1060. "Although the look to/interpret distinction is not always clear or amenable to a bright-line test, some assessments are easier to make than others . . . when the meaning of contract terms is not the subject of dispute, the bare fact that a [CBA] will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished. Similarly, alleging a hypothetical connection between the claim and the terms of the CBA is not enough to preempt the claim." *Id.* (internal citations omitted, cleaned up).

Here Plaintiff's mention of CBA seniority rights as one piece of evidence for the discrimination she allegedly suffered may not require an interpretation of the terms of the CBA. Moreover, Plaintiff raises several other allegations as a basis for her discrimination claims unrelated to the CBA violations. *See supra* Part I. Background Facts. Applying the *Burnside* test, the claims neither arise directly from rights created by the CBA, nor are they substantially dependent on an analysis of the CBA. Therefore, her claims are not preempted by the LMRA.

---

[4] Defendants argue that since Plaintiff is still employed with Defendants, then she cannot argue wrongful termination. Oppo. at 5, 12.

3:23-cv-02223-BEN-SBC

**B. Conclusion**

For removal based on federal question jurisdiction to be proper, a federal question must be present on the face of a plaintiff's complaint. *Caterpillar*, 485 U.S. at 392. The plaintiff is the master of the complaint and can avoid federal jurisdiction by relying solely on state law. *Id.* Here, Plaintiff brings a complaint with ten state law causes of action, all of which are based on state anti-discrimination and labor laws that remain independent of a collective bargaining agreement. The Court finds that Plaintiff has not raised a federal question in her complaint, thus making removal improper.

## IV.   CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiff's Motion to Remand and the case is remanded to the Superior Court of California, County of San Diego.

**IT IS SO ORDERED.**

Dated: July 18, 2024

_____

**HON. ROGER T. BENITEZ**
United States District Judge

3:23-cv-02223-BEN-SBC